UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWCOMB ANDERSON MCCORMICK, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARC ALTERNATIVES, et al., <br><br> Defendants. | Case No. 14-cv-01870-WHO <br><br> **ORDER ON MOTION TO DISMISS** <br> Re: Dkt. No. 16 |

## INTRODUCTION

Plaintiff Newcomb Anderson McCormick, Inc. ("NAM") is an "energy engineering and consulting firm" based in San Francisco. Compl. (Dkt. 1) at ¶ 8. It and its founders have moved to dismiss two causes of action in the counterclaim filed by NAM's former employees Driver, Schmitt, and Meiman ("individual Counterclaimants") as well as ARC Alternatives, Inc. ("ARC"), the NAM competitor the individual Counterclaimants founded and now work for. Compl. at ¶¶ 1, 8; Defs.' Answer (Dkt. 10) at ¶¶ 2–3, 8. The issue is whether the causes of action plausibly allege that NAM exercised its right to repurchase stock held by the individual Counterclaimants pursuant to a Shareholder Agreement, or whether instead NAM merely offered to do so conditioned on a certain price that the individual Counterclaimants rejected. Because the individual Counterclaimants' allegations are plausible, I will DENY the motion to dismiss.

## BACKGROUND

On January 27, 2014, Driver, Schmitt, and Meiman resigned from NAM to form their own competing company. Compl. at ¶ 26; Countercomplaint (Dkt. 10-4) at ¶ 22. NAM alleges that Driver, Schmitt, and Meiman formed ARC before they resigned from NAM. Compl. at ¶¶ 1–7, 26. On April 23, 2014, NAM filed a Complaint in this Court asserting eight causes of action against ARC, Driver, Schmitt, and Meiman. It alleges that Driver, Schmitt and Meiman abused their

positions as NAM employees in founding ARC. It also alleges that Counterclaimants subsequently took advantage of proprietary information and sabotaged NAM's relationships with past and prospective clients. Compl. at ¶¶ 3–7.[1]

In response, Driver, Schmitt, Meiman, and ARC assert seven counterclaims against NAM and three of its officers; John M. Newcomb, Ann L. McCormick, and Michael K.J. Anderson.[2] Counterclaimants contend that NAM and the officers have interfered with ARC's business relationships. Counterclaimants also allege that NAM and the officers violated the NAM Shareholder Agreement when, in a letter dated February 5, 2014, NAM invoked its right to repurchase the individual Counterclaimants' NAM shares under the Shareholder Agreement, but breached the same by offering to repurchase the shares at $1 per individual. Countercompl. at ¶¶ 27–30.

The Shareholder Agreement provides the terms governing repurchase of NAM stock from departing shareholders:

> 4.2.2. The company shall have the right, but not the obligation . . . , to purchase all or any of the shares of Company Stock owned by the Selling Shareholder (the "Available Shares"), by giving written notice of the exercise of such right to such Selling Shareholder within sixty (60) days after the date of the Triggering Event . . . . Subject to the Company's exercise of such right, the Selling Shareholder shall have the obligation to sell to the Company the number of Available Shares specified in such notice.

Countercompl., Ex. A, at 8.

The Shareholder Agreement also provides the terms governing the price for repurchased shares:

> 4.2.4. The price for each of the Available Shares which is purchased and sold (the "Purchase Price") in accordance with this Section 4.2 shall be equal to the Formula Value . . . of the Available Shares at the time of the Triggering Event; provided, however:

---

[1] NAM asserts seven state law causes of action and one federal cause of action against defendants. Federal jurisdiction is premised on NAM's federal cause of action under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. *See* 28 U.S.C. § 1331.
[2] The Counterclaimants initially asserted the claims they raise in this action in state court, in a complaint filed in Contra Costa County Superior Court on April 9, 2014. After NAM filed its Complaint here on April 23, 2014, the Counterclaimants dismissed their state court case and asserted their claims as counterclaims in this action.

> . . .
>
> (b) upon the occurrence of the Triggering event described in subsection 4.1.7 (resignation of Shareholder) in which the Shareholder resignation occurs within five (5) years of the date on which the Available Shares were issued to the Shareholder, the Purchase Price for such Available Share [sic] shall be the lesser of (i) the Formula Value of the Available Shares, and (ii) the price paid by the Shareholder for such Available Shares (or the price agreed to upon grant in the case of a grant of Shares) . . . .

*Id*. at 9.

On February 5, 2014, NAM sent identical written letters to each of the individual Counterclaimants. Declaration of Marc G. Fernandez in Support of Motion to Dismiss, Ex. B (Dkt. 16-3), at 3, 10, 17.[3] These letters informed Driver, Schmitt, and Meiman that:

> [P]ursuant to Section 4.2.4 of the Company's Shareholder Agreement, the Company intends to repurchase any shares of Company stock owned by you beneficially or of record, for a repurchase price equal to 'price paid by Shareholder' for such shares. Since the price paid for those shares was zero, the Company will be repurchasing them from you for an aggregate purchase price of One Dollar ($1.00). You will be receiving the documentation to facilitate this transaction shortly.

NAM and Newcomb, McCormick, and Anderson ("Counterclaim Defendants") move to dismiss the breach of contract and declaratory relief counterclaims based on the Shareholder Agreement.[4] The Counterclaim Defendants argue that they were not bound to repurchase stock at any price, and therefore the counterclaims fail to state a claim. The Counterclaimants oppose the motion, arguing that the motion to dismiss improperly rests on disputed issues of fact and disputed interpretations of the Shareholder Agreement.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

---

[3] I take judicial notice of the February 5th letters, which were incorporated by reference into the Countercomplaint. Countercompl. at ¶ 27; *see generally United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

[4] The other counterclaims are not at issue on this motion.

United States District Court
Northern District of California

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

The parties agree that the language in the Shareholder Agreement governs the repurchase of the individual Counterclaimants' shares.  The parties disagree whether, pursuant to this language, NAM was obligated to repurchase the shares after its counsel sent a letter purportedly exercising its right to do so.

### I.   THE LANGUAGE OF THE SHAREHOLDER AGREEMENT

Under California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." CAL. CIV. CODE § 1638; *see, e.g.*, *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 900 (N.D. Cal. 2011) (Spero, J.).  Here, the contract language is clear.  Pursuant to the NAM Shareholder Agreement, certain events trigger NAM's right to repurchase shares of its stock.  Countercompl., Ex. A, at 6–7.  These "Triggering Events" include — among others — a shareholder's death, bankruptcy, termination, resignation, or commencement of a relationship with a NAM competitor. *Id.*  Shareholders affected by Triggering Events are termed "Selling Shareholders." *Id.* at 7.  Selling Shareholders' shares are termed "Available Shares." *Id.* at 8.

4

1  The repurchase of Available Shares is governed by the Shareholder Agreement's "Buy-Sell Procedures." *Id.* at 6. These Buy-Sell Procedures require Selling Shareholders to notify NAM and other shareholders within 30 days after the occurrence of a Triggering Event. *Id.* at 7. NAM then holds "the right, but not the obligation . . . , to purchase all or any of the shares of [NAM stock] owned by the Selling Shareholder" within 60 days of the Triggering Event, but never less than 45 days after receiving a Selling Shareholder's notice. *Id.* at 8. "Subject to [NAM]'s exercise of such right," the Selling Shareholder must then sell to NAM "the number of Available Shares specified" in NAM's notice exercising the right of purchase. *Id.*

The Shareholder Agreement's Buy-Sell Procedures also establish the price for the Available Shares. This price varies according to the Triggering Event that causes the shares to become available. *Id.* Where the Selling Shareholder resigns within five years of the date of the Available Shares' issue, the purchase price for the Available Shares is the lesser of the following: (a) the "Formula Value," defined as 40 percent of NAM's gross revenues for the most recently ended fiscal year divided by the total number of issued and outstanding shares at the time of the Triggering Event; or (b) the price originally paid by the Selling Shareholder, or if the shares were granted, the price agreed upon at the time of grant. *Id.* at 9. In cases of a relationship with a competitor or termination for cause, the purchase price is equal to 50 percent of the Formula Value. *Id.* at 8.

## II.  BREACH OF CONTRACT

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" *Altman v. PNC Mortgage*, 850 F. Supp. 2d 1057, 1078 (E.D. Cal. 2012) (citing *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cap. App. 4th 1171, 1178 (2008)). Counterclaimants have sufficiently pled these elements.

Neither side argues that the terms of the Shareholder Agreement are ambiguous. Instead, the argument concerns the meaning and effect of the February 5th letter from NAM's counsel. Counterclaimants contend that the letter constituted NAM's exercise of the right to repurchase Available Shares. Countercompl. at ¶ 27. This allegedly rendered the Buy-Sell Procedures

5

binding on both parties at the Available Share price specified in the Shareholder Agreement. As the Counterclaim Defendants allegedly refused to repurchase the Available Shares at this price, the Counterclaimants claim to have suffered damages. *Id.* at ¶¶ 28–30, 37.

Counterclaim Defendants move to dismiss, arguing that because the Shareholder Agreement allowed NAM "unfettered discretion over whether or not to purchase shares from any shareholder after receiving written notice of a Triggering Event," they cannot be sued for failing to repurchase the stock. Mot. to Dismiss (Dkt. 16) 5. Counterclaim Defendants cite *Brandt v. Lockheed*, in which the California Court of Appeal found that an employer had absolute discretion under its employment contracts to issue monetary awards for invention. *Brandt v. Lockheed Missiles & Space Co.*, 154 Cal. App. 3d 1124, 1130 (1984) ("Here the language of the parties' contract of employment . . . could not be more clear and explicit. It says that Lockheed's Invention Awards Committee '*may, but is not obligated to* grant a Special Invention Award,' and that its decision on such matters 'shall be *final and conclusive*.'"). As the Counterclaim Defendants note, the language of the Shareholder Agreement is similar to that of employment contracts in *Brandt*. *See* Countercompl., Ex. A, at 8 ("The Company shall have the right, but not the obligation . . . , to purchase . . . .").

The comparison to *Brandt* does not help the Counterclaim Defendants. The issue is not the extent of NAM's discretion to exercise its right to repurchase, but whether NAM exercised that right (and then whether NAM had discretion to choose the price for repurchase as part of or after exercising that right). *See* Countercompl. at ¶ 27; Opp'n (Dkt. 22) 12. Counterclaimants' view — that NAM was obligated to complete the repurchase the moment it manifested its agreement to exercise the repurchase option — is a plausible reading of the limits to NAM's discretion under the Shareholder Agreement.

Counterclaim Defendants argue that the February 5th letter cannot reasonably be interpreted as agreeing to repurchase the Available Shares. Mot. to Dismiss 6. They characterize the letter not as exercising a right to repurchase, but as proposing an offer that was then rejected by the Counterclaimants. Reply (Dkt. 24) at 4. However, the question before the Court is whether the Counterclaimants have adequately pled their breach of contract claim. Nothing in the letter –

as incorporated into the counterclaim complaint – undermines the Counterclaimants' allegations as to the intent and effect of the letter as a matter of law.  For example, the letter expressly invokes the Shareholder Agreement; NAM "intends to repurchase any shares" of NAM stock "pursuant to Section 4.2.4 of the Company's Shareholder Agreement."[5]  Fernandez Decl., Ex. B at 3.  The letter also appears to leave Counterclaimants no option or input on the matter; Counterclaimants "will be receiving the documentation to facilitate this transaction shortly."  *Id.*  Nothing in the letter suggests that NAM viewed the transaction as negotiable or incomplete.

Counterclaim Defendants also assert that their "offer" to repurchase Available Shares was made conditional on the price of $1 per Selling Shareholder.  Mot. to Dismiss 6.  Counterclaim Defendants' dispute as to the meaning and effect of the letter cannot trump – on a motion to dismiss – the Counterclaimants' plausible interpretation of the letter as pled.

## III.  INDIVIDUAL COUNTERCLAIM DEFENDANTS

The three individual Counterclaim Defendants – Newcomb, McCormick, and Anderson – also move to dismiss, arguing that there are no facts pled to establish their individual liability to the Counterclaimants under the Shareholder Agreement.  Counterclaimants respond that leave to amend should be granted so that Counterclaimants can plead facts regarding the individuals under an alter ego theory.  The Court GRANTS the motion to dismiss as to the individual Counterclaim Defendants and also GRANTS leave to amend to allege additional facts regarding the individual's liability under the Shareholder Agreement.

## IV.  DECLARATORY RELIEF

Declaratory relief is a remedy available "at the discretion of the district court." *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982).  Under the Declaratory Relief Act, a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  However, declaratory relief is limited to cases of "actual controversy."  *Id.*

Counterclaimants seek declaratory relief with respect to their "rights and duties under the

---

[5] Section 4.2.4 governs the purchase price of Available Shares.  Countercompl., Ex. A, at 12–13.

7

Shareholder Agreement." Countercompl. at ¶ 39. For the reasons discussed above, an actual controversy exists regarding NAM's alleged exercise of the repurchase option. There is no basis for dismissing this claim against NAM at this time.

## CONCLUSION

Counterclaimants have sufficiently alleged the elements of breach of contract and have stated a cognizable claim for declaratory relief against NAM, but not against the individual Counterclaim Defendants. The Motion to Dismiss is GRANTED in part and DENIED in part. Counterclaimants' amended counterclaim (amending the first and second causes of action with respect to the individuals) shall be filed within ten (10) days of this Order.

**IT IS SO ORDERED**.

Dated: August 7, 2014

WILLIAM H. ORRICK
United States District Judge